IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ND PROPERTIES,
   Plaintiff,

    v.

BUCKHEAD LIFE RESTAURANT
GROUP, INC.,
   Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-3831-TWT

**OPINION AND ORDER**

This is an action seeking to recover on a guaranty. It is before the Court on the Plaintiff ND Properties' Motion for Summary Judgment [Doc. 23]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 23] is GRANTED in part and DENIED in part.

**I. Background**

On June 11, 1998, 3455, LLC and Cousins Loret entered into a leasing agreement ("Lease") under which 3455 leased the first floor of the building located at 3455 Peachtree Road, Northeast in Atlanta, Georgia (the "Pinnacle" building).[1] 3455 used the space to operate the Bluepointe restaurant, and the Lease term was set

---

[1] Pl.'s Statement of Facts ¶¶ 1-2.

to expire on October 31, 2014.[2] In connection with the Lease, the Defendant Buckhead Life Restaurant Group, Inc. entered into an agreement ("Guaranty") in which it guarantied 3455's performance under the Lease.[3] In 2004, Cousins Loret assigned its rights under the Lease to the Plaintiff ND Properties.[4]

According to ND Properties, in late 2008, 3455 began periodically missing rent payments.[5] Eventually, ND Properties brought an action in the Magistrate Court of Fulton County, Georgia.[6] It sought to exercise the remedies the Lease provided for in the event of a default, which included the following:

> 18.2.2[:] Landlord may terminate [3455's] right of possession (but not this Lease) and . . . expel or remove [3455] . . . without thereby releasing Tenant from any liability hereunder, without terminating this Lease . . . and Landlord may . . . relet the . . . Premises . . . and receive the rent therefor, Tenant hereby agreeing to pay to Landlord the deficiency, if any, between all Rent reserved hereunder and the total rental applicable to the Lease Term hereof obtained by Landlord re-letting, and Tenant shall be liable for Landlord's reasonable expenses in redecorating and restoring the . . . Premises and all reasonable costs incident to such re-letting.[7]

---

[2]  Id. ¶¶ 2-3.

[3]  Id. ¶ 5.

[4]  Id. ¶ 3.

[5]  Id. ¶ 8.

[6]  Id. ¶ 12.

[7]  Compl., Ex. 1.

ND Properties and 3455 participated in court-mandated mediation and ultimately entered into a consent agreement.[8] This agreement states, in part:

> Tenant's right to possess the premises (but not the Lease) shall immediately terminate (without further notice to Tenant) on the sooner to occur of (i) 11:59 p.m. on November 30, 2011, or (ii) the date on which any of the Forbearance Conditions fails to be satisfied.[9]

3455 vacated the premises on November 30, 2011, and did not make any further rent payments for the subsequent months.[10] Then, in December of 2012, ND Properties relet the premises to a new tenant who began its term (and began paying rent) in October of 2013.[11]

In a separate case, which was removed to this Court, 3455 brought an action against ND Properties.[12] There, 3455 requested a declaratory judgment stating that: (1) "[3455] is not liable for rent payments after [3455] vacated the Premises," (2) "ND Properties improperly retained possession of [3455's] property, (3) "ND Properties' actions in granting a right-of-way over to a third-party constituted termination of the

---

[8]   Id. ¶ 13.

[9]   Compl., Ex. 5.

[10]   Pl.'s Statement of Facts ¶ 15.

[11]   Id. ¶ 18.

[12]   See 3455 LLC v. ND Properties, Inc., No. 1:12-CV-01020-WSD, 2014 WL 3845696 (N.D. Ga. Aug. 5, 2014).

Lease," and (4) "[3455] is not obligated to clean and repair the Premises, or that such cleaning is not necessary."[13] The Court granted a Motion for Judgment on the Pleadings as to the first claim, stating that "the Lease contained an 'explicit and detailed provision' that permitted ND Properties, upon [3455's] default, to take possession of the Premises, without terminating the Lease, and without relieving [3455] of its obligation to continue making rent and other payments required by the Lease."[14] ND Properties asserted a counterclaim against 3455 for breach of the Lease agreement.[15] ND Properties moved for summary judgment against 3455's remaining claims, and in favor of its counterclaim, which the Court granted on August 5, 2014.[16]

In this case, ND Properties has filed suit against Buckhead Life Restaurant Group seeking to recover under the Guaranty. In particular, ND Properties seeks to recover for 3455's unpaid rent for the period between December of 2011 (right after 3455 vacated the premises) and September of 2013 (the month before the new tenant took over). Additionally, ND Properties seeks to recover (1) costs associated with reletting the premises, (2) other charges that 3455 incurred under the Lease, such as

---

[13]   Id. at *2

[14]   Id.

[15]   See id.

[16]   See id. at *11-12.

utility and parking fees, and (3) attorneys' fees. ND Properties now moves for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[17] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[18] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[19] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[20] A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[21]

## III. Discussion

---

[17]   FED. R. CIV. P. 56(c).

[18]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[19]   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[20]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[21]   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

**A. Liability**

ND Properties claims that Buckhead Life Restaurant Group is liable for 3455's outstanding debt under the Lease. Under Georgia law, "guarantors . . . are jointly and severally liable with their principal unless the contract provides otherwise."[22] Generally, "[o]nce a plaintiff establishes a prima facie case by producing a guarantee and showing that it was executed, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense."[23] In addition, "contracts of guarantee should be construed strongly against the guarantor, and if the construction is doubtful, that which goes most strongly against the party undertaking the obligation is generally to be preferred."[24]

Here, ND Properties produced a copy of the Guaranty, which states, in part:

> [Buckhead Life Restaurant Group] hereby covenants and agrees to and with Landlord that if default shall at any time be made by [3455] in the payment of any Base Rental, Percentage Rent, additional rent, or other charges and sums . . . [Buckhead Life Restaurant Group] shall and will forthwith pay Base Rental, Percentage Rent, additional rent and all other charges and sums, to Landlord and any arrears . . . and will forthwith pay to Landlord all damages that may arise in consequence of any default by [3455] under the Lease, including, without limitation, all attorneys' fees

---

[22] O.C.G.A. § 10-7-1.

[23] Ameris Bank v. Alliance Inv. & Mgmt. C., LLC, 321 Ga. App. 228, 233 (2013) (internal quotation marks omitted).

[24] Id. at 234 (internal quotation marks omitted).

and disbursements incurred by Landlord or caused by any such default or the enforcement of this Guaranty."[25]

Thus, according to the unambiguous text of the Guaranty, Buckhead Life Restaurant Group is liable to ND Properties for any outstanding amount owed by 3455 under the Lease.

In response, Buckhead Life Restaurant Group argues that its obligations under the Guaranty have been discharged because ND Properties helped cause 3455 to default, thus impermissibly exposing Buckhead Life Restaurant Group to more risk. In particular, Buckhead Life Restaurant Group claims that "ND Properties irrationally rejected payments, held payments, and filed unwarranted dispossessory and distraint proceedings that interfered with the operations of the restaurant resulting in business losses and 3455's inability to pay rent."[26] O.C.G.A. § 10-7-22 states that "[a]ny act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk or exposes him to greater liability shall discharge him." However, "the protections of OCGA § 10-7-22 can be waived."[27] Here, the Guaranty states that "the liability of [Buckhead Life Restaurant Group] . . . shall in no way be

---

[25] Mot. Summ. J., Ex. 5.

[26] Def.'s Resp. Br., at 11.

[27] <u>Builders Dev. Corp. v. Hughes Supply, Inc.</u>, 242 Ga. App. 244, 245 (2000).

affected, modified or diminished by reason of . . . any . . . action, inaction or omission under or in respect of the Lease, or . . . any dealings or transactions or matter or thing occurring between Landlord and [3455]."[28] Because the actions by ND Properties which Buckhead Life Restaurant Group complains of – e.g., rejecting payments – are "matter[s] or thing[s] occurring between" ND Properties and 3455, Buckhead Life Restaurant Group's O.C.G.A. §10-7-22 defense has been waived. Thus, Buckhead Life Restaurant Group is liable under the Guaranty, and the only remaining question goes to the amount for which it is liable.

### B. Damages

ND Properties claims that it is entitled to summary judgment, at the very least, on the issues of unpaid rent and reletting costs.[29] First, ND Properties claims that 3455 failed to pay rent following its eviction in November of 2011, and that Buckhead Life Restaurant Group is liable for this amount. In response, Buckhead Life Restaurant Group argues that "the general rule under Georgia law is that when a landlord evicts a tenant and retakes possession, the landlord cannot claim rent which accrues after the eviction."[30] However, "parties to a lease agreement may contract in advance to hold

---

[28]    Mot. Summ. J., Ex. 5.

[29]    Pl.'s Reply Br., at 8.

[30]    Def.'s Resp. Br., at 8.

the lessee liable for rent even after an eviction, deducting therefrom only the amounts recovered by the lessor from reletting the premises . . . [if such an agreement is] premised on the existence of an explicit and detailed provision in the lease which clearly and unequivocally expressed the parties' intention to hold the lessee responsible for after-accrued rent even should an eviction take place."[31] Here, as noted above, the Lease explicitly notes: "Landlord may terminate [3455's] right of possession (but not this Lease) and . . . expel or remove [3455] . . . *without thereby releasing Tenant from any liability hereunder, without terminating this Lease.*"[32] This is an "explicit and detailed provision" requiring 3455 to pay post-eviction rent. And it follows that Buckhead Life Restaurant Group, under the Guaranty, is similarly liable for the post-eviction rent that 3455 has failed to pay. To calculate damages, ND Properties submitted a Declaration by Linda Beauchamp – a former Senior Property Manager with Cousins Properties, Inc.[33] – indicating that, based on the Lease, 3455 owes $464,074.49 in unpaid rent.[34] Buckhead Life Restaurant Group argues that the Beauchamp Declaration "does not include any ledger to calculate past due amounts."

---

[31] Peterson v. P.C. Towers, L.P., 206 Ga. App. 591, 591-92 (1992) (internal quotation marks omitted).

[32] Compl., Ex. 1 (emphasis added).

[33] Beauchamp Decl. ¶ 6.

[34] Beauchamp Decl. ¶ 15.

But Buckhead Life Restaurant Group does not dispute the figure, nor does it dispute that Beauchamp is qualified to calculate the figure based on the terms of the Lease.[35] Accordingly, ND Properties is entitled to summary judgment on the issue of unpaid rent.

ND Properties then claims 3455 is obligated to compensate ND Properties for part of its reletting costs, and that Buckhead Life Restaurant Group is liable for this amount as well. The Lease states that "[3455] shall be liable for Landlord's reasonable expenses in redecorating and restoring the . . . Premises and all reasonable costs incident to such re-letting."[36] Beauchamp testified that ND Properties incurred the following costs in reletting the premises: $26,000 in legal costs, $258,780 in commissions, $25,000 for construction management, and $1,919,063 in tenant improvement costs for a total of $2,228,843.00.[37] However, ND Properties only requests $222,884.28 (approximately 10% of the total reletting costs) from Buckhead

---

[35] To be sure, a rough calculation of unpaid rent – based on the submitted documents – yields a similar figure. The Lease indicates that "Base Rental shall be the per annum amount equal to . . . $264,000 . . . payable in equal monthly installments . . .." (Compl., Ex. 1.) Thus, under these terms, 3455 was obligated to pay a base rate of $22,000 per month. The period of time in dispute – from December of 2011 to September of 2013 – spans twenty-two months. Thus, the amount of unpaid rent should be roughly $484,000.

[36] Compl., Ex. 1.

[37] Beauchamp Decl. ¶ 20.

Life Restaurant Group. In response, Buckhead Life Restaurant Group argues that the Lease only obligated 3455 to cover "*reasonable* expenses in redecorating and restoration," and that at least "$558,900 [was spent on] . . . new space not included in the lease with 3455."[38] However, ND Properties is only asking for 10% of the total reletting costs, which would largely cover the administrative fees.[39] Because Buckhead Life Restaurant Group fails to explain with any specificity why that amount is unreasonable, ND Properties is entitled to summary judgment on the issue of reletting costs.

However, there is a genuine issue of fact concerning what amount, if any, 3455 owes under the Lease for parking and utilities. To begin, ND Properties claims that it is owed $16,500.22 in unpaid parking fees. Buckhead Life Restaurant Group claims, however, that 3455 already paid all of the parking fees that it owed. In support, Buckhead Life Restaurant Group submitted a copy of an e-mail that Beauchamp sent on December 15, 2011, to a fellow property manager concerning the parking fees:

> I've looked at the . . . report prepared . . . for court and they owed $9,747.44 (Mar., June, July, Aug.) parking + $715.39 in interest/late fees = $10,462.83 which they paid in the Judgment of $148,967.45. Additionally, they paid $130,611 in the Judgment for Sept. - Nov. rent,

---

[38] Def.'s Resp. Br., at 17 (emphasis added).

[39] Beauchamp Decl. ¶¶ 20, 22; Pl.'s Reply Br., at 10.

estimated utilities and parking. It appears we need to cut them (AAA) an additional check or they haven't applied one(s) we sent.[40]

The Plaintiff argues that Beauchamp later testified, in her Declaration, that there are still certain outstanding parking charges. However, this is precisely Buckhead Life Restaurant Group's argument: Beauchamp has made conflicting statements, and there is no other evidence in the record to resolve the dispute. Accordingly, there is a genuine issue of fact as to whether 3455 owes ND Properties for any parking fees. Additionally, ND Properties claims that it is owed $22,839.76 for "unreimbursed above-standard water and electricity charges."[41] To be sure, 3455 made a payment to ND Properties pursuant to the Consent Order for utility charges. ND Properties is merely arguing that the payment was insufficient, and cites to Beauchamp's Declaration in support. However, as Buckhead Life Restaurant Group points out, Beauchamp provides no explanation as to how she arrived at her conclusion. She does not refer to any appended documents, nor does she describe where she received her information. Thus, there is a genuine issue of fact concerning whether 3455 still owes ND Properties for utility charges.

---

[40]   Def.'s Resp. Br., Ex. 2.

[41]   Pl.'s Mot. Summ. J., at 8.

Finally, ND Properties seeks attorneys' fees. Under O.C.G.A. § 13-1-11(a), "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity." O.C.G.A. § 13-1-11(a)(2) further states that "[i]f such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." Here, the Guaranty states that "[Buckhead Life Restaurant Group] . . . covenants and agrees to . . . forthwith pay to Landlord all damages that may arise in consequence of any default by Tenant under the Lease, including, without limitation, all *attorneys' fees* . . . incurred by Landlord or caused by any such default or *the enforcement of this Guaranty*."[42] In response, Buckhead Life Restaurant Group argues that ND Properties did not provide ten-days notice of its intent to seek attorneys' fees, as required by O.C.G.A. § 13-1-11(a)(3). However, "Georgia law permits notice under § 13-1-11 to

---

[42]  Compl. Ex. 4 (emphasis added).

be given through a complaint."[43] Here, the Complaint expressly states: "[The Plaintiff] hereby notifies Defendant, pursuant to O.C.G.A. § 13-1-11, that Defendant has ten (10) days from the date of service of this Complaint within which to pay all of the unpaid principal and accrued interest due under the Lease to avoid paying [the Plaintiff's] reasonable attorneys' fees . . . [n]otice is hereby given that under Georgia law, the obligation to pay attorneys' fees . . . means fifteen percent (15%) of the first $500.00 of principal and accrued interest owing and ten percent (10%) of the principal and accrued interest owing in excess of $500.00."[44] Accordingly, ND Properties is entitled to summary judgment on its request for attorneys' fees.

## IV. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the Plaintiff ND Properties' Motion for Summary Judgment [Doc. 23].

---

[43]  FAS Capital, LLC v. Carr, 7 F. Supp. 3d 1259, 1269 (N.D. Ga. 2014) (citing New House Prod., Inc. v. Commercial Plastics & Supply Corp., 141 Ga. App. 199, 200 (1977)).

[44]  Compl. ¶ 40.

SO ORDERED, this 14 day of November, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge